IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**STEVEN SHARP,**

    **Plaintiff,**

                                                            **Case No. 8:22-cv-2137**

v.

**FEDEX GROUND PACKAGE**                **JURY TRIAL DEMANDED**
**SYSTEM, INC.,**

    **Defendant.**
_____/

## COMPLAINT

Plaintiff Steven Sharp ("Sharp" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against the Defendant, FedEx Ground Package System, Inc. ("FedEx" or "Defendant"), and states as follows:

### PARTIES

1. Plaintiff Sharp is an individual over 18 years of age and is thus *sui juris*.

2. Sharp currently resides in Pinellas County, Florida, was at all times relevant to the allegations herein a resident of Pinellas County, Florida, and he has no intention of moving to another state in the foreseeable future.

3. Defendant is registered to do business in Florida as a Foreign Profit Corporation.

4. Defendant's principal place of business is 1000 FedEx Drive, Moon Township, Pennsylvania.

5. Thus, the Defendant is domiciled in the state of Pennsylvania.

## JURISDICTION AND VENUE

6. This is an action under Florida state law; specifically, the Florida Private Sector Whistle-blower's Protection Act ("the Act")(Fla. Stat. § 448.101 *et seq.*) and Florida's Workers' Compensation Retaliation Law ("WC Retaliation Law")(Fla. Stat. § 440.205).

7. There is complete diversity of the Parties, as Sharp is a citizen of the state of Florida and the Defendant is a citizen of the commonwealth of Pennsylvania.

8. Sharp has suffered damages in excess of $75,000.00 exclusive of attorney's fees, costs, and interest.

9. Accordingly, this Court has diversity jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1332.

10. Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Hillsborough County, which is located within the Middle District of Florida.

11. Thus, the Tampa Division is the proper division. M.D. Fla. Loc. R. 1.04(a).

## GENERAL ALLEGATIONS

12. The Defendant is a well-known shipping provider with a global reach.

13. Sharp began his employment with the Defendant on or about December 13, 2010.

14. Sharp worked for the Defendant as a Full Time Operational Manager in its Tampa, Florida facility, located in Hillsborough County.

15. In about early March 2022, Sharp began to observe serious safety violations.

16. The number of packages being processed at the Defendant's facility was increasing, but the staffing did not increase in relation to the package increase within Sharp's department.

17. Accordingly, within Sharp's department, the machines that were being used for scanning packages were not being adequately staffed and safely used.

18. The increase in packages without the necessary staff to process them resulted in packages being left on the floor and causing a serious tripping hazard.

19. This increase also required overuse of the package scanning machine causing a dangerous influx of packages on the back end of the conveyor belt.

20. In short, the employees could not keep pace with the flow of packages at the existing staffing level without compromising their physical safety.

21. On several occasions, Sharp reported the safety violations to the Defendant's management, and objected to the on-going exposure of the Defendant's employees to the hazardous working conditions.

22. However, the Defendant did nothing to remedy the dangerous conditions.

23. On or about April 13, 2022, Sharp personally witnessed three specific incidents of employee peril which he captured on video.

24. The incidents occurred at or about 4:24 a.m., 4:36 a.m., and 7:03 a.m. on April 13, 2022.

25. Coincidentally, on April 13, 2022 at about 6:30 a.m., Sharp reached out to Safety Specialist Aubrey l/n/u to request paperwork in order to get his shoulder medically evaluated due to an on-the-job injury.

26. At about 9:30 a.m. on April 13, 2022, Sharp was called into the office of his senior manager, Jesus Furones ("Furones"), allegedly to discuss Sharp's video recording of the work area.

27. Sharp advised Furones that he had video recorded the safety violations in order to show management how dangerous the conditions had become.

28. Sharp was again objecting to the unsafe conditions and he hoped that if the Senior Manager could see the dangerous condition on video, it would finally cause the Defendant to correct the problem.

29. Unfortunately, Furones was not interested in seeing the videos or otherwise addressing Sharp's objections to the safety violations.

30. Instead, Furones fired Sharp and instructed him to leave the property.

31. Since his termination, Sharp has learned that an employee of the Defendant was injured as a result of the Defendant's on-going refusal to correct the safety violations.

32. Sharp called the employee hotline to challenge his termination.

33. District Human Resources Representative Clay Miller ("Miller") and District Manager Joe Vinyani ("Vinyani") responded to Sharp's hotline call, contacting Sharp on a three-way call.

34. Sharp told Miller and Vinyani about the reports and objections to the safety concerns, along with his termination by Furones in retaliation for Sharp's objections to the safety concerns.

35. Although Miller and Vinyani could have reinstated Sharp, they upheld Furone's retaliatory acts.

## COUNT I (RETALIATION UNDER THE ACT—SAFETY VIOLATIONS)

36. Sharp reaffirms and realleges paragraphs 1-35 above.

37. At all times relevant hereto, the Defendant was a private corporation that employed ten or more persons, and is therefore an "employer" within the meaning of the Act.  Fla. Stat. § 448.101(3).

38. Sharp was employed by the Defendant for pay and is therefore an "employee" within the meaning of the Act.  Fla. Stat. § 448.101(2).

39. Sharp engaged in protected activity by objecting to the Defendant's violation of law, rule, and/or regulation.

40. In particular, the safety violations Sharp objected to would be considered violations of the General Duty Clause of the Occupational Safety and Health Act of 1970 ("OSHA").  29 U.S.C. § 654.

41. The Defendant terminated Sharp's employment, which is an adverse employment action.

42. There is a causal connection between Sharp's termination and his protected conduct, as evidenced by the close temporal proximity between the protected conduct and the adverse employment action, at minimum.

43. As a direct and proximate result of the Defendant's unlawful conduct, Sharp has suffered and continues to suffer harm in the form of lost pay and benefits and loss of the capacity to enjoy life and other mental anguish.

44. As a direct and proximate result of the Defendant's violation of law, described herein, Sharp has required the services of undersigned counsel, to whom he is obligated to remit fees and costs.

WHEREFORE, Sharp respectfully demands this Court enter judgment against the Defendant for the following:

   a. Backpay, including but not limited to, lost wages and benefits to the date of trial;

   b. Front pay or reinstatement;

   c. Interest on the amounts awarded, consistent with law;

   d. Nominal damages;

   e. Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering;

   f. Reasonable attorneys' fees and costs;

   g. Entrance of an injunction prohibiting the Defendant from further violations of the Act; and

h. Any and all other relief permitted by law deemed just and proper by the Court.

## COUNT II (WORKERS' COMPENSATION RETALIATION)

45. Sharp reaffirms and realleges paragraphs 1-34 above.

46. In about September 2021, Sharp injured his shoulder during his work with the Defendant.

47. Sharp reported his on-the-job injury to the Defendant.

48. On April 13, 2022, Sharp's shoulder injury flared-up due to him having to assist with the package processing to keep up with the increased volume and lack of staffing.

49. As such, Sharp reached back out to the safety coordinator to obtain the workers' compensation paperwork so he could obtain treatment.

50. About three hours later, Sharp was terminated, which is an adverse employment action.

51. There is a causal connection between Sharp's termination and his protected conduct, as evidenced by the close temporal proximity between the protected conduct and the adverse employment action, at minimum.

52. The Defendant terminated Sharp within hours of his communication of information that would lead the Defendant to believe he was making a valid workers' compensation claim or attempting to claim workers' compensation benefits.

53. The swiftness of the Defendant's retaliation and its refusal to reconsider its decision, as described infra, shows its reckless disregard for Sharp's legal rights under the WC Retaliation Law.

54. As a direct and proximate result of the Defendant's unlawful conduct, Sharp has suffered and continues to suffer harm in the form of lost pay and benefits and loss of the capacity to enjoy life and other mental anguish.

55. As a direct and proximate result of the Defendant's violation of law, described herein, Sharp has required the services of undersigned counsel, to whom he is obligated to remit fees and costs.

WHEREFORE, Sharp respectfully demands this Court enter judgment against the Defendant for the following:

a. Backpay, including but not limited to, lost wages and benefits to the date of trial;

b. Front pay or reinstatement;

c. Interest on the amounts awarded, consistent with law;

d. Nominal damages;

e. Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering;

f. Reasonable attorneys' fees and costs;

g. Punitive damages; and

h. Any and all other relief permitted by law deemed just and proper by the Court.

## COUNT III (RETALIATION UNDER THE ACT—FOR TERMINATION)

56. Sharp reaffirms and realleges paragraphs 1-35, 37-39, and 46-52 above.

57. The Defendant had at least one opportunity to reconsider Sharp's termination on April 13, 2022 and reinstate him.

58. In particular, Sharp petitioned the Defendant via the employee hotline and his subsequent communications with the Defendant's management team to revoke the termination decision.

59. Sharp indicated during his communications with the Defendant during the reconsideration process that he believed that his termination was motivated by his protected conduct, including his objections to the safety violations.

60. Thus, Sharp objected to his termination based upon the reasonable belief that the Defendant had violated a law, rule, and/or regulation by terminating him on a retaliatory basis.

61. Because the Defendant had the opportunity to reinstate/reemploy Sharp via the internal appeal process, and it refused to do so, it effectively terminated him again and/or failed to hire him.

62. The denial of Sharp's appeal would deter the average reasonable person from reporting and objecting to unlawful terminations during the appeal process.

63. As such, the Defendant violated the Act a second time when it refused to reinstate Sharp in retaliation for his objection to his termination which in and of itself was a violation of the Act.

64. In short, the violation of law that Sharp objected to during the appeal process was the Defendant's April 13, 2022 violation of the Act.

65. There is a causal connection between the refusal to reinstate Sharp and his protected conduct, as evidenced by the close temporal proximity between the protected conduct and the adverse employment action, at minimum.

66. Specifically, the refusal to reinstate Sharp occurred within a few weeks of the April 13, 2022 termination.

67. As a direct and proximate result of the Defendant's unlawful conduct, Sharp has suffered and continues to suffer harm in the form of lost pay and benefits and loss of the capacity to enjoy life and other mental anguish.

68. As a direct and proximate result of the Defendant's violation of law, described herein, Sharp has required the services of undersigned counsel, to whom he is obligated to remit fees and costs.

WHEREFORE, Sharp respectfully demands this Court enter judgment against the Defendant for the following:

  a. Backpay, including but not limited to, lost wages and benefits to the date of trial;

  b. Front pay or reinstatement;

  c. Interest on the amounts awarded, consistent with law;

  d. Nominal damages;

  e. Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering;

f.  Reasonable attorneys' fees and costs;

g.  Entrance of an injunction prohibiting the Defendant from further violations of the Act; and

h.  Any and all other relief permitted by law deemed just and proper by the Court.

## JURY TRIAL DEMAND

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 14th day of September, 2022.

/s/ Shaina Thorpe
SHAINA THORPE
Florida Bar No. 0055464
Primary: shaina@thorpelaw.net
Secondary: admin@thorpelaw.net

**THORPELAW, P.A.**
1228 East 7th Ave., Ste. 200
Tampa, Florida 33605
Telephone: (813) 400-0229
Fax: (813) 944-5223

*Counsel for Plaintiff Steven Sharp*